1  Mark E. Merin (State Bar No. 043849)
   Paul H. Masuhara (State Bar No. 289805)
2  LAW OFFICE OF MARK E. MERIN
   1010 F Street, Suite 300
3  Sacramento, California 95814
   Telephone:    (916) 443-6911
4  Facsimile:    (916) 447-8336
   E-Mail:       mark@markmerin.com
5                paul@markmerin.com
6
7  Attorneys for Plaintiffs
   ESTATE OF JARRED BARABINO, W.B., N.B.,
8  ROBERT BARABINO, and SUE SCHLEY

9               UNITED STATES DISTRICT COURT

10             EASTERN DISTRICT OF CALIFORNIA

11                  SACRAMENTO DIVISION

| | |
|---|---|
| 12  ESTATE OF JARRED BARABINO, W.B., N.B., ROBERT BARABINO, and SUE SCHLEY, | Case No. |
| 13 | **COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS** |
| 14          Plaintiffs, | |
| 15  vs. | **DEMAND FOR JURY TRIAL** |
| 16  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20, | |
| 17 | |
| 18 | |
| 19 | |
| 20          Defendants. | |

21

22

23                  **INTRODUCTION**

24          32-year-old JARRED BARABINO was denied necessary medical attention and inadequately

25  monitored as a pretrial detainee at the Sacramento County Main Jail by the jail staff employed by the

26  SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES and SACRAMENTO COUNTY

27  SHERIFF'S DEPARTMENT, causing him to sustain an anoxic brain injury on July 16, 2025, and to die

28  on August 18, 2025.

                              1

## JURISDICTION & VENUE

1. This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities protected by the United States Constitution). This Court has jurisdiction of the state claims under 28 U.S.C. § 1367.

2. Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3. Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Sacramento, California.

## EXHAUSTION

4. On September 2, 2025, the ESTATE OF JARRED BARABINO, W.B., N.B., ROBERT BARABINO, and SUE SCHLEY submitted a timely and substantially compliant government claim to the COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES relating to the claims asserted in this action. Claim No. L2500809-0001.

5. On October 1, 2025, the COUNTY OF SACRAMENTO issued a notice of rejection of the government claim.

6. By October 20, 2025, the SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES failed or refused to act on the government claim.

## PARTIES

7. Plaintiff ESTATE OF JARRED BARABINO appears by and through real-parties-in-interest Plaintiffs W.B. and N.B., JARRED BARABINO's biological children, who bring this action pursuant to California Code of Civil Procedure § 377.30. Plaintiffs W.B. and N.B. bring this action as the successors-in-interest on behalf of JARRED BARABINO. Plaintiffs W.B. and N.B.'s declaration regarding status as the successors-in-interest to JARRED BARABINO is attached, pursuant to California

2

Code of Civil Procedure § 377.32.

8.      Plaintiff W.B. is a resident of the County of Plumas, California. Plaintiff W.B. is the biological daughter of JARRED BARABINO. Plaintiff W.B. brings this action: (1) in a representative capacity, as a successor-in-interest on behalf of JARRED BARABINO; and (2) in an individual capacity, on behalf of herself.

9.      Plaintiff N.B. is a resident of the County of Plumas, California. Plaintiff N.B. is the biological daughter of JARRED BARABINO. Plaintiff N.B. brings this action: (1) in a representative capacity, as a successor-in-interest on behalf of JARRED BARABINO; and (2) in an individual capacity, on behalf of herself.

10.     Plaintiff ROBERT BARABINO is a resident of the County of Sacramento, California. Plaintiff ROBERT BARABINO is the biological father of JARRED BARABINO. Plaintiff ROBERT BARABINO brings this action in an individual capacity, on behalf of himself.

11.     Plaintiff SUE SCHLEY is a resident of the County of El Dorado, California. Plaintiff SUE SCHLEY is the biological mother of JARRED BARABINO. Plaintiff SUE SCHLEY brings this action in an individual capacity, on behalf of herself.

12.     Defendant COUNTY OF SACRAMENTO is located in the County of Sacramento, California. Defendant COUNTY OF SACRAMENTO is a "public entity" pursuant to California Government Code § 811.2.

13.     Defendant SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES is located in the County of Sacramento, California. Defendant SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES is a "public entity," pursuant to California Government Code § 811.2.

14.     Defendant ERIC SERGIENKO was, at all times material herein, Chief Medical Officer/Medical Director for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, acting within the scope of employment and under color of state law. Defendant ERIC SERGIENKO is sued in an individual capacity.

15.     Defendant HELEN VIRTUDAZO OLASO is and was, at all times material herein, an employee of Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY

DEPARTMENT OF HEALTH SERVICES, acting within the scope of employment and under color of state law. Defendant HELEN VIRTUDAZO OLASO is sued in an individual capacity.

16.     Defendant SHIELA VIBAR is and was, at all times material herein, an employee of Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, acting within the scope of employment and under color of state law. Defendant SHIELA VIBAR is sued in an individual capacity.

17.     Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is located in the County of Sacramento, California. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is a "public entity" pursuant to California Government Code § 811.2.

18.     Defendant JIM COOPER is and was, at all times material herein, Sheriff for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JIM COOPER is sued in an individual capacity.

19.     Defendants DOE 1 to 20 are and/or were agents, contractors, or employees of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and/or SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of agency or employment and under color of state law. Defendants DOE 1 to 20 are sued by their fictitious names and their true and correct names and identities will be substituted when ascertained.

## GENERAL ALLEGATIONS

20.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

### Healthcare at the Sacramento County Jail

21.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER are responsible for taking charge of and keeping county jail facilities and the inmates in it, and are answerable for the inmates' safety and security, pursuant to California law and Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's written policies. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER are responsible for the actions and inactions and the policies and

4

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barabino v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

customs of their employees, agents, and contractors, and for supervising all aspects of the jail facilities under their supervision, including inmates' access to safe and secure housing and competent healthcare.

22.     Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES and ERIC SERGIENKO are/were responsible for the provision of healthcare services to inmates in county jail facilities, and are/were answerable for the inmates' healthcare, pursuant to Defendant SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES's written policies. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and ERIC SERGIENKO are/were responsible for the actions and inactions and the policies and customs of their employees, agents, and contractors, and for supervising all aspects of the healthcare services under their supervision, including intake evaluations, housing, assessments, monitoring, and treatment/safety planning.

23.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained a policy or custom of providing inadequate healthcare services to the inmates, including when healthcare staff were not available to evaluate, treat, and/or refer for specialized treatment inmates demonstrating urgent medical/mental health needs; and where untrained and unqualified correctional staff were required to make medical decisions relating to the care of inmates demonstrating urgent medical/mental health needs.

**Jarred Barabino**

24.     JARRED BARABINO was 32 years old when he died on August 18, 2025.

25.     JARRED BARABINO suffered from diagnosed disabilities, including multiple substance abuse disorders.

26.     JARRED BARABINO's disabilities required hospitalization and treatment on occasion, and substantially limited one or more major life activities, including the ability to care for one's self, concentrate, think, and communicate. JARRED BARABINO was prescribed medications for his disabilities on occasion, including for detoxification (diazepam, ondansetron, loperamide, clonidine).

27.     JARRED BARABINO suffered from the effects of his disabilities at the time of his incarceration, including from July 14, 2025, to July 16, 2025.

5

**July 14, 2025**

28.      On July 14, 2025, JARRED BARABINO was arrested and transported to the Sacramento County Main Jail, 651 I Street, Sacramento, CA 95814.

29.      JARRED BARABINO's jail records reported "Past Problems," including "FOSS IV (ICD10-F99)," "Encounter for screening examination for mental health and behavioral disorders, unspecified (ICD10-Z13.30)," "Fentanyl dependence (ICD-304.00) (ICD10-F11.20)," "Hepatitis C (ICD-070.70) (ICD10-B19.20)," "Abscess and cellulitis of R index finger (ICD-681.00) (ICD10-L02.511)," "Acquired flexion deformity of right finger (ICD-736.89) (ICD10-M21.249)," "Polysubstance withdrawal (ICD-292.0) (ICD10-F19.939)," "Alcoholism (ICD-303.90) (ICD10-F10.20)," "Benzodiazepine dependence (ICD-304.11) (ICD10-F13.20)," "Opioid abuse (ICD-305.50) (ICD10-F11.10)," and "Methamphetamine abuse (ICD-305.70) (ICD10-F15.10)"

30.      Around 4:55 p.m., Twinkle Icban, a nurse (RN), reported a "Nurse Intake Phase 1" for JARRED BARABINO. Therein, it was reported: "Uses Drugs or Alcohol? Yes"; "Hypertensive >130/>90? Yes"; "Mildly drowsy . . . . Hx of Xanax and FTY [fentanyl] user. Will need UDT [urine drug test]"

31.      Around 5:23 p.m., Rhea Alvior, a nurse (RN), reported a "Nurse Intake Phase 2" for JARRED BARABINO. Therein, it was reported: "Have you used any substances including alcohol in the last 30 Days? Yes"; "Do you use both opiates and benzodiazepines on a daily basis? Yes"; "Substances reported used in the last 30 days: Alcohol, Fentanyl"; "Urine Test Results Positive," "Positive Results[:] Amphetamine, Fentanyl, Marijuana, Methamphetamines, Methylenedioxymethamphetamine"; "Pt admit taking suboxone prescription on and off for 4-5 years; last suboxone used was this morning 7/14"; "Fentanyl[:] Used within the past 30 days?: Yes," "# of Days Used in Previous 30 Days: 20+ Days," "Duration: 4 years," "Date of Last Use: 07/14/2025," "Frequency: daily," "Amount: 1/2 gram," "Route of Admin: Smoking," "Comment(s): admit smoking and shooting IV fentanyl"; "COWS (Clinical Opiate Withdrawal Scale) … Follow up orders: Monitor within 6 hours," "COWS Total Score: 1"; "Xanax[:] Used within the past 30 days?: Yes," "# of Days Used in Previous 30 Days: 20+ Days," "Duration: 2 months," "Date of Last Use: 07/13/2025," "Amount: 2 bars," "Frequency: daily Route of Admin: Oral"; "Drowsiness/Lethargy[:] mild"; "CIWA-B Scale … Follow up orders: Monitor within 6 hours," "CIWA

6

Score: 0"; "Housing Recommendation for SSO [Sacramento Sheriff's Office:] Withdrawal Management - DETOX RISK," "MAT Induction Housing"; "Nurse Monitoring Orders: Q2Hour Medical Observation Cell, Q30Min Welfare Check," "Order Description appears drowsy; hx of opiates/alcohol withdrawal from previous incarceration; bzo dependence; UDT + fentanyl. meth, mdma, amp, THC"; "Note: Appears drowsy but easily arousable," "Hx of withdrawal from previous incarceration," "UDT + fentanyl, meth, mdma, amp, THC," "Admit smoking fentany 1/2 gram daily x 4 yrs; last used this morning 7/14," "Takes xanax 2 bars daily for 2 months; LD: 07/13," "Pt states he inject alcohol with fentanyl and meth"

32.    JARRED BARABINO was housed in a jail holding cell.

33.    Around 11:42 p.m., Mirwais Sorosh, a nurse (RN), reported a "Nurse Withdrawal Monitoring" for JARRED BARABINO. Therein, it was reported: "Saw pt at intake for detox monitoring," "Pt reports anxiety, sweatings, nausea, body pain, yawning, the writer observed goosefleshs skin."; "COWS (Clinical Opiate Withdrawal Scale) … Follow up orders: Monitor Twice Daily," "COWS Total Score: 10"; "CIWA-B Scale … Follow up orders: Monitor Twice Daily," "CIWA Score: 3"

### July 15, 2025

34.    JARRED BARABINO was re-housed in cell 6 East 300 11 Lower.

35.    On July 15, 2025, around 2:07 a.m., Defendant HELEN VIRTUDAZO OLASO, a nurse (RN), reported a "Nurse Withdrawal Monitoring" for JARRED BARABINO. Therein, it was reported: "COWS (Clinical Opiate Withdrawal Scale) … Follow up orders: Continue existing monitoring schedule," "COWS Total Score: 11"; "Drowsiness/Lethargy[:] mild"; "CIWA-B Scale … Follow up orders: Continue existing monitoring schedule," "CIWA Score: 9"

36.    Around 11:21 a.m., Twinkle Icban reported a "Nurse Withdrawal Monitoring" for JARRED BARABINO. Therein, it was reported: "COWS (Clinical Opiate Withdrawal Scale) … Follow up orders: Continue existing monitoring schedule," "COWS Total Score: 6"; "CIWA-B Scale … Follow up orders: Continue existing monitoring schedule," "CIWA Score: 7"

37.    JARRED BARABINO was re-housed in cell 6 East 300 07 Lower.

38.    Around 5:33 p.m., Jessica Singh, a social worker (LCSW), reported a "MH General Note: Mental Health Clinician : Custody referral" for JARRED BARABINO. Therein, it was reported:

"Custody referral: Patient endorsed Si [suicidal ideation] with no plan because he does not have a towel on his door (meaning he cannot come out as he pleases on a detox floor)"

39.    Around 5:35 p.m., Catherine Nelson-Smith, a nurse (RN), reported a "Nurse Chart Review: Nurse : DTS/SI [Danger to Self/Suicidal Ideation]" for JARRED BARABINO. Therein, it was reported: "Per custody, inmate is suicidal and moving to 3W, NO SS. Qday welfare checks to be completed until cleared by JPS [Jail Psychiatric Services]."

40.    JARRED BARABINO was re-housed in cell 3 West 200 14 Lower.

41.    Around 9:32 p.m., Sandeep Kaur, a nurse (RN), reported a "Nurse Sick Call: c/o chest discomfort" for JARRED BARABINO. Therein, it was reported: "c/o chest pain in the center of chest; denied pain radiating anywhere else," "pt appears anxious; having difficulty sitting stills; no tremors noted," "EKG: sinurs rhythm w/ long QT interval"

42.    Around 9:39 p.m., Sandeep Kaur reported a "Refusal of Treatment: EKG and IVF" for JARRED BARABINO. Therein, it was reported: "Pt anxious; kept pacing back and forth in the cell," "removed IV from left hand; found pt in the bed laying and fluids dripping on the floor," "requested pt to come to 2med exam room for repeat EKG," "sat on exam table and stated, he doesn't want any IVF and no EKG done and wants to go back to housing," "risks and benefits discussed with pt and he signed refusal form; sent back to housing w/o incident."

**July 16, 2025**

43.    On July 16, 2025, around 1:15 a.m., Danielle Flores, a nurse (RN), reported a "Nurse Withdrawal Monitoring" occurring on July 15, 2025, for JARRED BARABINO. Therein, it was reported: "CIWA-B Scale … Follow up orders: Continue existing monitoring schedule," "CIWA Score: 6"; "COWS (Clinical Opiate Withdrawal Scale) … Follow up orders: Continue existing monitoring schedule," "COWS Total Score: 6"

44.    Around 12:51 a.m., Patricia Reyna, a social worker (LCSW), reported a "Mental Health Assessment" occurring on July 15, 2025, for JARRED BARABINO. Therein, it was reported: "Diagnostic and Psychosocial Formulation: Pt reports going through withdrawals. Pt reported that he did not feel suicidial and was 'struggling with detox.' … Pt reported hx and current use of benzos, meth, fentanyl, and alcohol. Pt denied prior psych hx/meds. Pt meeds criteria for poly substance dependence.";

8

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barabino v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

"Additional Comments (self-reported diagnoses, etc.): … Pt stated he is not suicidal and requested to be moved to the detox floor. Pt reported he has been feeling anxious and restless due to withdrawal sxs. Pt reported using meth, benzos, fentanyl, and alcohol. Pt reported he is connected with TLCS CORE for Suboxone."; "Target Symptoms: Pt endorsed some anxiety, recent substance use, and detoxing."

45.    JARRED BARABINO was re-housed in cell 6 East 200 10 Lower.

46.    Around 2:46 a.m., Defendant HELEN VIRTUDAZO OLASO reported "Vital Signs" for JARRED BARABINO. Therein, it was reported: "AO, resp even and unlabored, not in distress, walks independently, a little bit drowsy, answers questions appropriately," "Speech clear, able to verbalize needs, calm & cooperative, skin warm to touch," "Pt is currently on BZO and opiate detox meds," "Electrolytes offered, able to tolerate," "Encouraged to maintain hydration, nutrition, medication adherence, and to notify staff for worsening symptoms or any medical issues," "Pt verbalized understanding," "Continue POC."

47.    Defendant HELEN VIRTUDAZO OLASO's vital signs note entered at 2:46 a.m. is the last time medical staff reported that JARRED BARABINO had been observed conscious, and no further medical staff reported checking JARRED BARABINO's condition until around 12:03 p.m. where JARRED BARABINO was found in his cell unconscious.

48.    Around 4:33 a.m., Patricia Reyna reported a "MH Suicide Risk Assessment: Intake" occurring on July 15, 2025, for JARRED BARABINO. Therein, it was reported: "History of substance abuse: Yes"; "Single cell placement: Yes"; "First week of detainment: Yes";" Unable to adjust to deprivations of confinement: Yes"; "Current substance use or active detoxification: Yes"; "Family support (visits, correspondence): No"; "Children at home: No"; "Religious/spiritual/cultural beliefs: No"; "Spousal/partner support: No"; "Job or school assignment: No"; "Exercises Regularly: No"; "Active and motivated in psych treatment: No"; "Positive coping/conflict resolution skills: No"; "Chronic Risk: Low," "Acute Risk: Low"; "Chronic Risk Factors: Pt's chronic risk is estimated at low. Pt is a middle aged, Causcasian male with hx of polysubstance dependence. Pt denies prior SA"; "Acute Risk Factors: Pt's acute risk is estimated at low. Pt denied SI, intent, or plan.Pt reported he said he was SI because he is struggling with detoxing, however states he is not SI. Pt requested to be referred to the detox floor so he can get appropriate treatment."; "Short Term: Pt does not meet criteria for APU pre-admit for DTS.

9

Custody provided with suicide precautions sheet dated 7/15/25."; "Long Term: Submit HSR to mental health if needed."

49.    Around 6:54 p.m., Jennifer Villa, a doctor (MD), reported a "Provider Visit: Cardiac arrest" for JARRED BARABINO. Therein, it was reported: "Chief Complaint[:] Man down unrepsonsive w/o pulse or breathing"; "History of present illness: 32 year male with hx of polysub abuse. I was working on 2 med when mandown on 6E called and very shortly thereafter the fact that he had no pulse and was not breathing and cpr was in progress was added to the announcement over radio. When I arrived pt was on the floor in the dayroom and cpr was already in progress. and AED was already applied to pt. Code 3 ambulance had already been callled. He had already recieved 8 mg of narcan prior to my arrival. I instructed nuring staff to begin bagging to address airway and instructed them to add oxygen which was done. Instructed nusing staff that we needed an iv for acls drugs and attempt at iv placement in the left foream was made by SRN but was unsuccessful largely due to movement from cpr being in progress. BVM was also swtiched out by RN once crash cart arrived due to concerns it was not inflating properly and did seem to inflate and work better when it was changed. He recieved 4 shocks from our AED prior to EMS arrival. EMS arrived and put him on a monitor. Initially monitor revealed tachy (v fib at times) around 180s. He recieved 1 additoinal shock by EMS. I/O access was placed by EMS and he received 1 round of epi. He also received amiodarone. ROSC was achieved with good pulse and strong independent respirations. EMS intubated pt. 12 lead from EMS monitor showed ST elevations (mostly inferior leads) but those seemed to resolve on repeat EKG. There were however subsequent EKGs the were transported to the hospiital with the pt. Fingerstick bood sugar 180."

50.    Around 7:04 p.m., Defendant SHIELA VIBAR, a nurse (RN), reported "Nurse Withdrawal Monitoring: Unresponsive" for JARRED BARABINO. Therein, it was reported: "Officer reported to writer that pt refused to come out," "Officer opened the cell door, seen pt pt laying at his bed, pt name called multiple times but not verbally responding," "Writer and officer went inside the cell, no chest rise and fall noted, sternal rub done, not verbally responding," "Help was called made by officer and writer ; notified 2M , floor provider, activat EMS," "pt moved from bed to pod dayroom floor," "No pulse , not breathing ; CPR initiated; O2 BVM 15L/min started; VS taken, no results were obtained," "12:02 pm Kloxxado 8mg administered on left nostrils ; no response," "12:03 pm Dr Villa arrived,"

10

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barabino v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

1  "CPR in progress; custody officer took over, AED applied; shocks delivered," "SRN's and 2M RN

2  arrived," "Attempted IV insertion but unsuccessful," "12:13pm EMS arrived"

3      51.    Around 8:11 p.m., Catherine Nelson-Smith reported "Code Documentation Form" for

4  JARRED BARABINO. Therein, it was reported: "Code: 3," "Facility: Main Jail," "Housing unit: 6E,"

5  "Medical Arrival Time: 1205," "EMS Called? Yes," "EMS arrival time: 1214," "EMS departure time:

6  1231," "Was patient sent out? Yes," "Incident Type: Cardiac"; "Responsiveness: Unresponsive,"

7  "Breathing: No breathing or agonal," "Pulse: Absent," "Time CPR started: 1206," "Shock 1 Delivered:

8  1208," "Shock 2 Delivered: 1211," "Shock 3 Delivered: 1215," "O2 applied? Yes," "O2 mechanism:

9  Ambubag"; "Assessment[:] 12:03 pm 2M RNs notified by 2M deputys there is Man Down on 6E 200

10  pod," "Unresponsive, CPR initiated and EMS activated," "12:05 pm When arriving at the scene pt was

11  lying in supine position in 200 POD, confirmed no pulse, no breathing and no chest rise and fall noted,"

12  "Pt was slightly blue in color and BVM in use," "Pt had AED pads in place and CPR was being done by

13  multiple deputies taking turns," "12:07 pm O2 BVM 25L/min started w/ new bag," "12:07 PM IV line

14  was primed and ready," "12:07 pm SRN Trish attempted IV in L FA. Was unsuccessful d/t lots of

15  movement during CPR," "12:08 pm Shock Delivered," "12:09 pm CPR Continued," "12:11 pm Shock

16  Delivered," "12:12 CPR Continued," "12:14 pm EMS Arrived/ Continued CPR," "12:16 Shock

17  Delivered by EMS," "12:17 pm CPR Continued," "An I/O was inserted in pr R shoulder and 1 round of

18  Epi was administered by EMS, Amiodarone was also administered by EMS," "Pulse and strong

19  independent respiration was achieved," "12:23 pm Pt intubated by EMS," "12:26 pm 12 lead was

20  applied, EKG x 2 resulting in STEMI and Tombstone," "12:28 pm Pt on Gurney," "12:31 pm Pt off

21  floor," "Per Cal Fire pt had an MI"; "Disposition: Sent to ER"

22      52.    JARRED BARABINO was transported from the Sacramento County Main Jail to Sutter

23  Medical Center Sacramento, 2825 Capitol Avenue, Sacramento CA 95816.

24      53.    JARRED BARABINO was diagnosed with an anoxic brain injury which rendered him

25  brain-dead.

26      54.    Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 were

27  responsible for supervising and monitoring JARRED BARABINO, including through routine and staff-

28  ordered evaluations, direct visual safety checks, and/or closed-circuit television (CCTV) monitoring of

11

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barabino v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

the area in the jail which JARRED BARABINO was housed.

55.    Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 knew or should have known that JARRED BARABINO was experiencing a medical emergency, including based on the ability to monitor and observe JARRED BARABINO.

56.    Defendants SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 10 were deliberately indifferent to JARRED BARABINO's serious medical needs, where they made an intentional decision with respect to JARRED BARABINO's conditions of confinement which created a substantial and obvious risk of harm and they did not take reasonable available measures to abate that risk, including timely and sufficiently assessing, evaluating, diagnosing, housing, monitoring, treating, and/or summoning care for JARRED BARABINO, and a reasonable official in the circumstances would have appreciated the high degree of risk involved, including JARRED BARABINO's medical history, grievances, and observed serious medical needs and the jail's extensive history of inadequate medical care for patients/inmates.

57.    Defendants SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 10 failed to utilize appropriate policies, training, standards, and procedures, including in violation of California Code of Regulations title 15 § 1207 (Medical Receiving Screening), § 1208 (Access to Treatment), § 1210 (Individualized Treatment Plans), and § 1213 (Detoxification Treatment); National Commission on Correctional Health Care, Standards for Health Services in Jails (NCCHC) Standard J-F-01 (Ongoing Care for Chronic Illness), Standard J-E-02 (Receiving Screening), Standard J-E-04 (Initial Health Assessment); Adult Correctional Health (ACH) Standard 01-12 (Access to Care), Standard 04-08 (Specialty Referrals), Standard 04-09 (Medical Transportation), Standard 04-22 (Hospital Care), Standard 05-02 (Medication Assisted Treatment), Standard 05-05 (Nurse Intake), Standard 05-06 (Methadone Treatment), Standard 05-07 (SUD Counselor), Standard 05-13 (Initial History and Physical Assessment), Standard 06-02 (Patients with Disabilities); Standardized Nursing Procedures (SNP) re: Benzodiazepine Withdrawal Treatment, Opiate Withdrawal Treatment; Adult Correctional Health Standardized Nursing Procedures, Substance Use Disorders (SUD) Policy re: Opioid Withdrawal

12

Treatment, Opioid Withdrawal Monitoring and Treatment; Adult Correctional Health, Division of Primary Health, Department of Health Services, Policy and Procedure, Policy 05-02 (Medication Assisted Treatment); Sacramento County Adult Correctional Health, Division of Primary Health, Department of Health Services (MH) Policy 01-10 (Access to Mental Health Services), Policy 03-04 (Acute Psychiatric Nursing Responsibilities), Policy 4-03 (Basic Mental Health Services), Policy 04-04 (Acute Psychiatric Unit Admission, Program, and Discharge), Policy 07-02 (Treatment Planning); and Jail Psychiatric Services (JPS) Policy 701 (Inpatient Nursing Admission Procedure), Policy 805 (Acute Inpatient Unit to General Population), Policy 1021 (Acute Inpatient Nursing Staff Responsibilities), Policy 1037 (Outpatient Intake).

58.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 11 to 20 failed to utilize appropriate policies, training, standards, and procedures, including in violation of California Code of Regulations title 15 § 1027.5 (Safety Checks); California Commission on Peace Officer Standards and Training (POST) Learning Domain 12 (Controlled Substances), Learning Domain 31 (Custody); Sacramento County Sheriff's Department Custody Procedure Manual Procedure 504 (Cell Checks), Procedure 512 (Searches), Procedure 521 (Body Scanner), Procedure 704 (Emergency Health Care Services), Procedure 711 (Detoxification and Withdrawal), Procedure 713 (Suicide Prevention and Intervention), Procedure 1009 (Visitation); Sacramento County Sheriff's Department Deputy Sheriff Training Manual; and Sacramento County Sheriff's Department Training Module Re: "Person Searches," "Sacramento County Main Jail Booking and Intake Procedures."

**August 18, 2025**

59.     On August 18, 2025, JARRED BARABINO died as a result of injuries sustained while in-custody at the Sacramento County Main Jail on or about July 16, 2025.

60.     The Sacramento County Coroner's Office reported JARRED BARABINO's cause of death as "Mixed Drug Intoxication," and reported the presence of substances in JARRED BARABINO's antemortem blood sample, including: "Amphetamine 77 ng/ml," "Methamphetamine 160 ng/ml," "Diazepam 86 ng/ml," "Nordiazepam 64 ng/ml," "Fentanyl 1.1 ng/ml," "Norfentanyl 1.0 ng/ml."

\ \ \

## POLICY / CUSTOM ALLEGATIONS

61.    Defendant ERIC SERGIENKO has served as Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES Chief Medical Officer/Medical Director from March 2024 to February 2025, and part-time Medical Officer/Medical Director from February 2025 to present. Defendant ERIC SERGIENKO, in his capacity as Medical Director, is and was a final policymaking official for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, including as it relates to the provision of basic healthcare/medical services to inmates at jail facilities and developing and implementing individualized treatment plans; training, supervision, and discipline of staff acting under his command; and the safekeeping of inmates/prisoners in his care.

62.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and ERIC SERGIENKO, including subordinate personnel Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 10, maintained and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in the following deficiencies:

(a)    Failure to medically screen inmates/patients;

(b)    Failure to initiate and perform protocols and procedures for at-risk inmates/patients, including detoxification and withdrawal assessments;

(c)    Failure to recognize inmates/patients' serious medical needs;

(d)    Failure to send inmates/patients to a hospital or facility for serious medical needs;

(e)    Failure to accurately/truthfully report information in inmates/patients' medical records; and/or

(f)    Failure accurately/truthfully to report inmates/patients' condition to jail staff.

63.    Defendant JIM COOPER has served as Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's Sheriff from December 2022 to present. Defendant JIM COOPER is and was a final policymaking official for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, including as it relates to the maintenance and operation of jail facilities; training, supervision, and discipline of personnel

14

acting under his command; and the safekeeping of inmates/prisoners in his custody. For example, Defendant JIM COOPER is and was responsible for the personal safety of and medical care provided to inmates/prisoners in Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's custody, including detection and interdiction of contraband and all policies, procedures, customs, hiring, staffing, supervision, and training related thereto.

64.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, including subordinate personnel Defendants DOE 11 to 20, maintained and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in the following deficiencies:

(a)     Failure to search, screen, and interdict for contraband in jail facilities;

(b)     Failure to observe, monitor, and supervise inmates/patients;

(c)     Failure to detect, investigate, intervene, or intercede when dangerous and emergency conditions are present in jail facilities; and/or

(d)     Failure to summon and provide necessary care for inmates/patients' serious medical needs.

65.     _Mays_ Consent Decree: Since January 2020, Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and their personnel have been subject to a jail conditions consent decree entered in _Mays v. County of Sacramento_, No. 2:18-cv-02081-TLN-CSK, ECF No. 85-1 & 110 (E.D. Cal. Jan. 8, 2020). Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are largely non-compliant with the terms of the court-ordered consent decree. For example, monitoring reports prepared by court-appointed experts pursuant to the consent decree continuously demonstrate non-compliance:

(a)     On January 20, 2021, the First Monitoring Report of Medical Experts found, for 75 total consent decree provisions, substantial compliance with 4 provisions (5%), partial compliance with 15 provisions (20%), non-compliance with 39 provisions (52%), and 17 provisions (23%) were not

15

evaluated. *Mays*, *supra*, ECF No. 136-1 (E.D. Cal. Jan. 20, 2021). Specifically, the review's findings were "deeply concerning." *Id*. For example, "[t]here are serious and systemic issues resulting in harm to patients, including hospitalizations and death," *id*. at 7–8, "[t]he sick call system does not provide timely access to care," *id*. at 8, "[t]here are excessive delays in transporting patient[s] to the hospital," *id*. at 9, and "[t]here are serious nursing and medical quality of care issues," *id*. at 9. The report made an "alarming finding [] that nurses do not notify physicians when a patient's condition is clearly deteriorating, which has resulted in hospitalizations and deaths," and that, even when physicians are notified, "physicians also minimized patient clinical findings and failed to adequately treat their underlying chronic medical conditions." *Id*. at 9. "These cases may reflect a wider cultural issue at the jail in how health care personnel view their obligations to provide timely, appropriate and compassionate care to patients." *Id*. at 9.

(b)      On October 4, 2021, the Second Monitoring Report of Medical Experts found, for 75 total consent decree provisions, substantial compliance with 12 provisions (16%), partial compliance with 19 provisions (25%), non-compliance with 37 provisions (49%), and seven provisions (9%) were not evaluated. *Mays*, *supra*, ECF No. 149-1 at 13 (E.D. Cal. Oct. 4, 2021). Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g. chronic care, mortality review)" and that "[c]onsiderable work remains to achieve Consent Decree compliance." *Id*. at 12. For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." *Id*. at 11–12. The report found that "there has been custody interference in the provision of health care," including where custody staff has denied inmates necessary medical care and, in at least one case, allowed an inmate to "languish[] to near death before intervention took place." *Id*. at 9.

(c)      On October 25, 2022, the Third Monitoring Report of Medical Experts found, for 75 total consent decree provisions, substantial compliance with 13 provisions (17%), partial compliance with 22 provisions (29%), non-compliance with 33 provisions (44%), and seven provisions (9%) were not evaluated. *Mays*, *supra*, ECF No. 162-1 at 14 (E.D. Cal. Oct. 25, 2022). Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an

16

adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g., chronic care, mortality review)" and "[c]onsiderable work remain[ed] to achieve Consent Decree compliance." *Id*. at 13. For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." *Id*. at 10–12. The "review showed continuing harm to patients as a result of population pressures, lack of medical and mental health beds, health care systems issues, and lapses in care." *Id*. at 6. The report found a "practice of providers cutting and pasting notes" which "risks documenting history and physical examinations and education that have not been conducted and, in some cases, simply amounts to falsification of medical records." *Id*. at 28.

(d)     On August 15, 2023, the Fourth Monitoring Report of Medical Experts found, for 75 total consent decree provisions, substantial compliance with 25 provisions (33%), partial compliance with 25 provisions (33%), and non-compliance with 25 provisions (33%). *Mays*, *supra*, ECF No. 168-1 at 6 (E.D. Cal. Aug. 15, 2023). Specifically, the "review showed persistence of *critical* issues that impact access to—and quality of care that resulted in serious harm to patients, and places the inmate population at risk of harm if not immediately addressed," including: "Insufficient health care staffing; Insufficient custody staff dedicated to health care delivery; Lack of patient access to care, including custody barriers to care; Lack of evaluation of medical care quality, including mortality reviews; Lack of timely access to specialty services and implementation of recommendations; Failure to deliver ordered care (e.g., cancellation of medication administration); Inadequate evaluation, treatment, and monitoring of patients with substance use disorders; Lack of a Medication Assisted Treatment (MAT) program to induct patients on suboxone or other treatment; [and] Inadequate treatment space and environment of care." *Id*. For example, "[t]he County is not providing timely patient access to specialty services, resulting in delayed diagnosis and treatment." *Id*. at 11–12. A "detailed case reviews show[ed] multiple lapses in care in many records." *Id*. at 13 n.21. The report found that medical "[p]roviders conducted inadequate medical evaluations and treatment leading to deterioration of the patient," including by falsifying medical records and "copy[ing] and past[ing] *previous* examinations into the progress note, *without amending the note to reflect the actual condition of the patient*." *Id*. at 22.

(e)     On July 16, 2024, the Fifth Monitoring Report of the Medical Consent Decree found, for 80 total consent decree provisions, substantial compliance with 24 provisions (30%), partial

compliance with 31 provisions (41%), and non-compliance with 23 provisions (29%). *Mays*, *supra*, ECF No. 180-1 at 8 (E.D. Cal. July 16, 2024). Specifically, the review found that "there has been ongoing noncompliance with key provisions of the *Mays* Consent Decree that result in ongoing harm to the patient population at Sacramento County Jail. These include: • Lack of custody medical escorts to conduct health care operations; • Custody obstructing access to care, resulting in harm and preventable hospitalization; • RCCC inmates being empowered to control other inmates' access to health services request and grievance forms; • Ongoing lack of privacy in the booking area, causing demonstrable harm to patients[;] • Failure of the access to care system (nurse sick call); • Ongoing serious medication errors caused by the pharmacy system, medical providers, and nurses, resulting in preventable harm and hospitalizations; and • System and quality issues related to medical screening and use of the sobering cell. . . . [W]e are obligated to note that these conditions have existed since the beginning of the *Mays* Consent Decree, are causing ongoing harm, and must be immediately and definitively corrected." *Id*. at 8–9 (fns. omitted).

(f)     On August 14, 2024, *Mays* court-appointed medical experts sent a letter regarding "Recent Mortalities at Sacramento County Jail," including JARRED BARABINO's death which was one of "five deaths in the Sacramento County Jails" since "May 2024." Therein, the medical experts "recommend[ed] … critical corrective actions" and determined: "Review of these deaths showed serious system and individual performance issues, including inadequate emergency response [and] inadequate medical care prior to death… [¶] Through review of medical records and video footage, we concluded that some of the recent deaths in the jail may have been preventable. We also determined that immediate action must be taken by ACH [Adult Correctional Health] and the Sacramento Sheriff's Office (SSO) to address dangerous deficiencies in current practices." *Recent Mortalities at Sacramento County Jail* (Aug. 14, 2024), available at: <https://www.disabilityrightsca.org/system/files/file-attachments/24.08.14%20Letter%20to%20Sacramento%20County%20Regarding%20Mortalities%20in%202024_Redacted.pdf>.

(g)     On August 19, 2024, *Mays* court-appointed class counsel sent a letter regarding the "wave of deaths in the Sacramento County Jails in recent months." Therein, class counsel found: "For years, we have raised concerns about the custody culture of the Sacramento Sheriff's Office. Having

reviewed the surveillance and body-worn camera footage of several recent deaths, we write to again express our deep concern about the SSO's failure to respond with humanity and decency to people in need. * * * This callousness on the part of the Sacramento Sheriff's Office is consistent with our reporting over the years. We and the court-appointed experts have reported for years about these profound cultural problems. * * * The recent deaths in the jails are a symptom of a larger and long-standing cultural problem with the Sacramento Sheriff's Office. The Sheriff must take accountability for the apathy and callousness that pervades the jail and exercise leadership to make immediate changes. Sacramento County should demand decency for the people it incarcerates." *Letter to Sheriff Cooper* (Aug. 19, 2024), available at: <https://www.disabilityrightsca.org/system/files/file-attachments/24.08.19%20Mays%20Counsel%20to%20Sheriff%20Cooper%20re%20Recent%20Jail%20Deaths.pdf>.

(h)     On January 27, 2025, the Sixth Monitoring Report of the Medical Consent Decree found, for 80 total consent decree provisions, substantial compliance with 15 provisions (19%), partial compliance with 40 provisions (51%), and non-compliance with 24 provisions (29%). *Mays*, *supra*, ECF No. 197-1 at 8 (E.D. Cal. Jan. 27, 2025). Specifically, the review found that "Patient access to a medical provider has worsened since the last review period"; "Patients lack timely access to specialty services which has resulted in patient harm"; "Patients with chronic diseases are not consistently provided care in accordance with nationally recognized chronic disease guidelines"; "The County has not conducted regular evaluations of provider quality resulting in continuation of care that does not meet current medical care guidelines"; and "The County lacks adequate medical leadership at the jail." *Id*. at 8–17.

(i)     On July 30, 2025, the Seventh Monitoring Report of the Medical Consent Decree found, for 80 total consent decree provisions, substantial compliance with 14 provisions (18%), partial compliance with 47 provisions (59%), and non-compliance with 18 provisions (22%). *Mays*, *supra*, ECF No. 214-1 at 8 (E.D. Cal. July 30, 2025). Specifically, the review found that "Challenges in the care and treatment of patients under the influence and at risk of withdrawal from alcohol and drugs remain. There is a lack of appropriate intake referrals for Obstetrics and Addiction Medicine. Nursing withdrawal monitoring is not timely and is often not done at all. Staff do not recognize patients experiencing severe and potentially life-threatening intoxication and therefore do not timely transfer them to a higher level of

19

care. Patients determined to be fit for confinement who require sobering are placed on the floor, in a cell, in the booking suite, and are not consistently monitored by nursing staff. Patients who are intoxicated and those at risk for withdrawal from alcohol and drugs require appropriate medical placement, monitoring, and treatment." *Id*. at 10.

66.    Monitoring: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained a policy or custom whereby jail staff inadequately diagnose, monitor, and provide care for inmates/patients' serious medical needs, including overdose, detoxification, and withdrawal. For example:

(a)    On July 30, 2025, the *Mays* consent decree monitors reported that "Nurses do not consistently complete withdrawal monitoring in a timely manner, as ordered and required by ACH [Adult Correctional Health] policy, and do not monitor patients placed in the sobering cell as required by ACH policy." *Mays*, *supra*, ECF No. 214-1 at 92–102 (E.D. Cal. July 30, 2025).

(b)    On June 15, 2025, a 55-year-old male inmate reportedly died ("Alcohol/Drug Overdose") at the Sacramento County Main Jail. <https://www.sacsheriff.com/pages/transparency.php>.

(c)    On April 23, 2025, a 32-year-old female inmate reportedly died ("Alcohol/Drug Overdose") at the Sacramento County Main Jail. <https://www.sacsheriff.com/pages/transparency.php>.

(d)    On November 12, 2024, a 54-year-old female inmate reportedly died ("Natural") at the Sacramento County Main Jail. <https://www.sacsheriff.com/pages/transparency.php>.

(e)    On July 26, 2024, a 40-year-old Asaiah Washington died of an overdose at the Sacramento County Main Jail. Washington did not receive adequate medical care or monitoring at the jail and engaged in drug-seeking behavior while in-custody. On July 26, 2024, Washington and his cellmate ingested fentanyl in their cell, without detection by jail staff, and experienced a medical emergency, including loss of consciousness. Washington died. A civil rights lawsuit was filed. *Estate of Washington v. County of Sacramento*, No. 2:25-cv-02124-JAM-AC (E.D. Cal.). The case remains pending.

(f)    On June 28, 2024, a 41-year-old male inmate reportedly died ("Natural") at the Rio Cosumnes Correctional Center. <https://www.sacsheriff.com/pages/transparency.php>.

(g)     On June 8, 2024, a 29-year-old male inmate reportedly died ("Alcohol/Drug Overdose") at the Sacramento County Main Jail. <https://www.sacsheriff.com/pages/transparency.php>.

(h)     On May 12, 2024, 55-year-old David Barefield died of an overdose at the Sacramento County Main Jail. The *Mays* consent decree class counsel described "the tragic death" as "reflect[ing] [] broader and long-standing concerns. [¶] In May 2024, an unhoused, middle-aged, Black man was brought into the jail in the middle of the night. Because he was unable to stand on his own, arresting officers dragged him through the parking lot and into the jail to begin the intake process. The SSO [Sacramento Sheriff's Office] has informed us that the man was arrested due to outstanding warrants for trespassing and petty theft, not because he had any new charges. [¶] From the moment he entered the jail, the man was unable to stand. In the arrest reports room—the first stop in the intake process—the Certified Nursing Assistant (CNA) could not take his vital signs because he was shaking and unable to remain still. He soon fell to the floor, where he remained for several minutes. Video footage shows that while the man was lying on the floor, the arresting officer from the Sacramento Police Department appeared to casually engage in a conversation with the CNA. Neither the arresting officer nor the CNA showed any alarm that this man was lying on the floor and unable to stand on his own; they continued having a conversation over his body. Eventually, a staff member decided to remove the man from the floor. But instead of getting a wheelchair to transport him through the booking process or considering whether his inability to stand suggested a need for hospitalization, staff placed him in a cart intended for short-term use for transporting combative arrestees. He remained in that cart for the next two and a half hours. [¶] Around 2 AM—about an hour after the man arrived at the jail—a Registered Nurse assigned to the intake area of the jail engaged in a brief conversation with him. The conversation, which lasted less than four minutes, was the extent of the medical evaluation to determine whether this person was medically fit for incarceration. The nurse conducted the 'medical intake' within earshot of other arrestees in the non-confidential part of the arrest reports room. The nurse failed to ask required medical intake questions, then falsified information on the medical intake form. After this less-than-four-minute-long conversation, the nurse cleared the man as medically fit for incarceration. These egregious failures by medical staff will be the subject of a forthcoming letter by the federal court-appointed medical experts. [¶] The man remained alone, laying in the cart, for the next 90 minutes, with minimal interaction

with any staff members. Around 3:30 AM, the SSO took formal 'custody' of the man and began the custodial intake process. The SSO deputies dragged him out of the cart, but he was still unable to stand on his own. Minutes later, deputies placed him back into the cart. By that point, he had defecated on himself and was covered in feces. [¶] The deputies then decided to drag the man's mostly limp body through the intake process. They pulled him out of the cart and yelled at him, 'Stop playing games!' They then brought him out of the arrest reports room and conducted a pat-down body search on him. As they dragged him, his pants came down, leaving him completely exposed from the waist down. [¶] The man remained unable to form a coherent sentence and appeared largely incapable of motion. Nonetheless, the deputies persisted in processing him through the standard intake protocol. They dragged his motionless body down the hallway, cuffed and facedown on the floor. At 3:39 AM, deputies dragged him to the photo station so that they could take his intake photo. Because the man could not hold his head up on his own, deputies grabbed him by his hair and yanked his slumped head against the wall so that they could capture the intake photo. The surveillance video shows the man on his knees with his genitals exposed as two deputies hold his nearly lifeless head up by his hair. His booking photo similarly shows two deputies' black-gloved fists grabbing his hair to hold his head up. [¶] Deputies then turned the man to the side and again yanked his hair back to take a booking photo from his profile. At that point, he was mumbling, 'I am Jesus Christ' and other incoherent noises. His voice sounded drowsy, like it was difficult for him to form sounds. He demonstrated no resistance, either verbally or physically, at any point. [¶] At 3:41 AM, deputies uncuffed the man so they could scan his fingerprints. The man's limp body laid near the fingerprint station as the deputy moved his arm around to capture a viable fingerprint scan. A minute later, the intake nurse walked by the fingerprint station. A sergeant who was seated nearby observing this intake process asked the nurse whether the man had cleared medical intake. The nurse responded, 'His vitals were fine. He's just old and homeless.' The nurse briefly walked back to look at the patient, and then said, 'He's breathing. He's just uncooperative.' The nurse then walked away. [¶] Minutes later, after completing the fingerprint scan, deputies finally appeared to acknowledge that this person needed immediate medical attention. They began asking him if he was okay, and they checked for his pulse. At 3:46 AM, life-saving care was initiated, and custody staff called the Fire Department. At 4:20 AM, he was pronounced dead. [¶] Video footage shows no evidence of custody

staff verbally abusing this man, but the story of his death highlights a profound and persistent problem with the Sheriff's Office—callousness, apathy, and unacceptable tolerance for human suffering. The deputies who processed this man through the booking process did so with no regard for his extreme physical distress. An hour before he died, they told him he was playing games because he was unable to stand. They did not deviate from their standard booking protocol for a person in the final moments of his life. They grabbed him by the hair to take his intake photo. As he laid on the floor, they held his limp hand on the fingerprint scanner to make sure his fingerprints were captured in the system. They were simply going about business as usual." Finally, class counsel concluded: "This callousness on the part of the Sacramento Sheriff's Office is consistent with our reporting over the years. We and the court-appointed experts have reported for years about these profound cultural problems. * * * The recent deaths in the jails are a symptom of a larger and long-standing cultural problem with the Sacramento Sheriff's Office. The Sheriff must take accountability for the apathy and callousness that pervades the jail and exercise leadership to make immediate changes. Sacramento County should demand decency for the people it incarcerates." *Letter to Sheriff Jim Cooper* (Aug. 19, 2024), available at:

<https://www.disabilityrightsca.org/system/files/file-attachments/24.08.19%20Mays%20Counsel%20to%20Sheriff%20Cooper%20re%20Recent%20Jail%20Deaths.pdf>; *see also Mays*, *supra*, ECF No. 197-1 at 143–145 (E.D. Cal. Jan. 27, 2025). A civil rights lawsuit was filed. *Estate of Barefield v. City of Sacramento*, No. 2:24-cv-03427-TLN-JDP (E.D. Cal.). The case was settled pre-trial against the County of Sacramento for $3,500,000.

(i)     On May 5, 2024, 45-year-old inmate Lope Tolosa died at the Sacramento County Jail. Three days earlier, Tolosa was admitted to the jail intoxicated and detoxification housing was ordered. The medical staff did not medically evaluate Tolosa for withdrawal treatment at any time prior to his death. Nine hours after admission, the nurse who was to conduct withdrawal monitoring made no attempt to locate Tolosa. Tolosa was found minimally responsive inside of his cell by a deputy. In response, the deputy went to another floor of the jail, found a nurse, and told the nurse that Tolosa needed medical attention. But the nurse did not respond to Tolosa's location and instead told the deputy to call downstairs. Tolosa died. The *Mays* medical expert monitors described the incident as follows: "In summary, this case represents a failure to medically evaluate, treat, and monitor the patient who was at

risk for alcohol withdrawal and death. It also represents a failure of emergency response. In the mortality review, the Medical Director did not include key system and individual performance issues that needed to be addressed. This fails to meet the requirements of the Consent Decree, and this death may have been preventable." *Recent Mortalities at Sacramento County Jail* (Aug. 14, 2024), available at: <https://www.disabilityrightsca.org/system/files/file-attachments/24.08.14%20Letter%20to%20Sacramento%20County%20Regarding%20Mortalities%20in%202024_Redacted.pdf>. A civil rights lawsuit was filed. *Tolosa v. County of Sacramento*, No. 2:25-cv-01033-DAD-JDP (E.D. Cal.). The case remains pending.

(j)     On July 21, 2024, a 37-year-old male inmate reportedly died ("Alcohol/Drug Overdose") at the Sacramento County Main Jail. <https://www.sacsheriff.com/pages/transparency.php>.

(k)     On July 8, 2023, 43-year-old inmate Michael Prince died at the Sacramento County Jail. On July 2, 2023, Prince was admitted to the jail with a medical history including serious mental illness; noncompliance with medications; neuropathy, peripheral due to diabetes; diabetes mellitus, type 2; elevated blood pressure reading without diagnosis of hypertension; diabetic peripheral neuropathy; body aches; alcohol use disorder; anxiety state, unspecified; bipolar disorder; FOSS III; tested positive for COVID-19; heroin abuse; alcohol abuse; and benzodiazepine withdrawal. From July 2, 2023, to July 8, 2023, jail staff failed adequately to house, monitor, and respond to Prince's obvious and deteriorating medical condition. On July 8, 2023, Prince was found dead in his cell. The *Mays* medical expert monitors found: "[R]ecord review showed that for one patient housed on the detox unit, nurses did not conduct any withdrawal monitoring during the six days prior to his death."; and "On 7/2/2023, a patient was admitted to the detox unit with alcohol and opioid substance use disorder but nurses did not monitor the patient for the six days the patient was in the unit. The patient died on the morning of 7/8/2023." *Mays*, *supra*, ECF No. 168-1 at 15 (E.D. Cal. Aug. 15, 2023). A civil rights lawsuit was filed. *Estate of Prince v. County of Sacramento*, No. 2:24-cv-00992-DC-JDP (E.D. Cal.). The case was settled pre-trial for $695,000.

(l)     On July 21, 2023, 37-year-old inmate Cody Catanzarite died at the Sacramento County Jail. Catanzarite was admitted and booked into detoxification housing after reporting that he had ingested fentanyl, and he had a history of fentanyl use and alcohol consumption. The intake nurse did not

issue routine orders, such as alcohol/opioid withdrawal monitoring, detox medication regimens, or urgent referral to a medical provider. The next day, Catanzarite went into cardiac arrest and died of a drug overdose. The *Mays* medical expert monitors found: "concerns are that after Tier 1 screening, the patient was taken out of the booking loop for processing by custody before Tier 2 medical screening was conducted. In the 5.5 hours before a nurse saw the patient, his COWS score increased from 1 to 9. Given his history of fentanyl and alcohol substance use disorder, starting the patient on opioid and alcohol detox regimens needed to be considered, however because Tier 2 screening was delayed, it was not." *Mays*, *supra*, ECF No. 168-1 at 142 (E.D. Cal. Aug. 15, 2023). A civil rights lawsuit was filed. *Estate of Catanzarite v. County of Sacramento*, No. 2:24-cv-01123-DAD-CKD (E.D. Cal.). The case was settled pre-trial.

(m)    On July 8, 2023, a 44-year-old male inmate reportedly died ("Alcohol/Drug Overdose") at the Sacramento County Main Jail. <https://www.sacsheriff.com/pages/transparency.php>.

(n)    On April 5, 2023, 35-year-old inmate Delion Johnson died of an overdose at the Sacramento County Jail. Johnson was inadequately searched and monitored by jail staff upon intake, who failed to detect a "golf-ball sized" baggie of pills in Johnson's jacket. Inside a holding cell, Johnson distributed and ingested drugs over the course of several hours, within sight of an in-cell surveillance camera which was unmonitored by jail staff, and as jail staff walked by but failed to look into the cell while conducting "safety checks." Eventually, Johnson lost consciousness and passed out inside of the cell. Johnson medical emergency was undetected or ignored for more than three hours, as several jail staff members walked by the cell, without observing or checking on Johnson. Later, an inmate worker alerted a jail staff member to Johnson's condition. But it was too late and Johnson died. A civil rights lawsuit was filed. *Estate of Johnson v. County of Sacramento*, No. 2:23-cv-01304-DC-JDP (E.D. Cal.). The case remains pending.

(o)    On January 23, 2023, a 52-year-old male inmate reportedly died ("Natural") at the Sacramento County Main Jail. <https://www.sacsheriff.com/pages/transparency.php>.

(p)    On January 1, 2023, a 35-year-old Keith Still died at the Sacramento County Main Jail. Still was a mental health detainee awaiting transportation to a state hospital for treatment. Nathaniel Green, a sheriff's deputy and training officer, was training Anastasiya Zhelezoglo, a sheriff records

25

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barabino v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

officer (SRO), how to perform cell checks. Around 11:45 a.m., Green and Zhelezoglo observed Still unconscious in his solitary cell lying face down on his left side, with his head underneath the cell table. Green said, "That doesn't look good. I'm gonna come back to him. Give me one second." Then, Green and Zhelezoglo continued to conduct cell checks before stopping at an empty cell which Green proceeded to show to Zhelezoglo. After Green showed the empty cell to Zhelezoglo, they returned to the control room. In the control room, Green informed a nurse that Still was man-down in his cell. Green and the nurse returned to Still's cell, where Still remained unconscious and lying on his left side in the same position. Chest compressions were started on Still more than six minutes after Green and Zhelezoglo after observed Still lying unconscious on his cell floor. At 12:21 p.m. hours, Still was declared dead. In a post-incident interview, Green acknowledged he should have immediately called for medical attention after observing Still unconscious in his cell. In an internal affairs investigation, jail captain Vanessa Vaden recommended, and sheriff Jim Cooper "affirmed," that Green be suspended for 20 hours but that the suspension be "held in abeyance." 2023PSD-0030.

(q)     On February 15, 2022, 37-year-old inmate Anthony Galley suffered a seizure caused by severe alcohol withdrawal and died at the Sacramento County Main Jail. On February 13, 2022, Galley was admitted into the jail while intoxicated with a medical history of alcohol use disorder and addiction. The jail staff failed to utilize or implement necessary alcohol detoxification protocols, confined Galley to a holding cell without adequate monitoring, and ignored him until he was found unresponsive and died. *Mays*, *supra*, ECF No. 153-4; *Mays*, *supra*, ECF No. 162-1 at 76. A civil rights lawsuit was filed. *Galley v. County of Sacramento*, No. 2:23-cv-00325-WBS-AC (E.D. Cal.). The case remains pending.

(r)     On July 24, 2021, inmate Timothy Noble died while withdrawing from opiates at the Sacramento County Main Jail. Days earlier, Noble was booked into the jail and began receiving treatment for opiate withdrawal. The jail staff did not provide Noble with special housing or monitoring. Noble's cellmate observed but the jail staff failed to recognize that Noble did not eat or drink for two days prior to his death. Sacramento County Sheriff's Department, Report No. 2021-224861; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Noble-2021-.pdf>.

(s)     On August 4, 2020, inmate Travis Welde overdosed at the Sacramento County

Main Jail and died of "hemopericardium due to a ruptured acute myocardial infarction resulting from mixed drug intoxication." Days earlier, Welde was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration," after Welde's urine drug screening test was positive for amphetamines, methamphetamines, THC, MDMA, and opiates. Welde was "engaging in erratic behavior, such as kicking his door and talking nonsensically." On August 2, 2020, Welde was transferred to the mental health housing unit and his condition continued to deteriorate, including "smear[ing] feces on himself and his cell walls," "talking to himself" and "yelling unintelligibly," "sweating" or appearing "wet," "flail[ing] his arms," and "sit[ting] and stand[ing] back up repeatedly." On August 3, 2020, Welde told staff that he was "detoxing." The jail staff ignored the risk to Welde because "nursing staff believed Welde was outside the time period for detoxing from drug use due to the length of time Welde had been in the jail." Later, the jail's mental health staff concluded that Welde was "gravely disabled" and he was "placed him on the waiting list for a higher level of mental health care." On August 4, 2020, Welde was "standing naked at the cell door," "breathing heavily," and "bouncing back and forth on the balls of his feet." The jail staff asked Welde if he was okay and, in response, Welde "grunted and shook his head." The jail staff continued to ignore Welde. An hour later, Welde was found lying "face down and naked" on the floor. The jail staff continued to ignore him. Later, the jail staff entered the cell and determined that Welde was not breathing and had no pulse. Sacramento County Sheriff's Department, Report No. 2020-248721; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Review-Welde-.pdf>.

(t)    In 2020, an internal affairs investigation initially centered on complaints against one jail deputy resulted in findings of "common themes" among several "subject officers," including "Poor communication," "Lack of situational awareness," "Inability to multi-task," "Lack of accountability," and "Violating well-established practice." For example, the investigation found that a first deputy falsely reported safety checks, including during three sample dates: "05/10/2020, Deputy [#1] failed to complete ten (10) cell checks, which were logged as having been completed"; "06/21/2020, Deputy [#1] failed to complete nineteen (19) cell checks, which were logged as having been completed"; and "06/23/2020, Deputy [#1] failed to complete seven (7) cell checks, which were logged as having been completed." The findings "hypothesize[d] this pattern of behavior exist[ed] well beyond the dates in

27

question," which were only reviewed as samples. Additionally, the investigation found that a second deputy falsely reported safety checks, including during three sample dates: "05/10/2020, Deputy [#2] failed to complete ten (10) cell check, which was logged as having been completed"; "05/31/202, Deputy [#2] failed to complete six (6) cell checks, which were logged as having been completed"; "06/23/2020, Deputy [#2] failed to complete five (5) cell checks, which were logged as having been completed." Again, the findings "hypothesize[d] this pattern of behavior exist[ed] well beyond the dates in question," which were only reviewed as samples. The investigation found that a sheriff's records officer (SRO) falsely reported safety checks, including during three sample dates: "05/31/2020, SRO [] logged six (6) cell checks, which had not been completed"; "06/21/2020, SRO logged nineteen (19) cell checks, which had not been completed"; and "06/23/2020, SRO logged fourteen (14) cell checks, which had not been completed." Again, the findings "hypothesize[d] this pattern of behavior exist[ed] well beyond the dates in question," which were only reviewed as samples. 2020PSD-0336.

(u)    On June 11, 2019, inmate Andrew Armstead overdosed at the Sacramento County Main Jail and died of "methamphetamine intoxication." Armstead was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." A day after booking, Armstead was summoned for a classification interview but failed to appear. Later, the jail staff observed Armstead inside of his cell and non-responsive on a bunk. Later, Armstead's cellmate pressed the emergency intercom button inside the cell and reported that Armstead was non-responsive. Later, the jail staff responded to the cell and observed that Armstead had no pulse. Armstead's blood was found to contain amphetamine and methamphetamine. Sacramento County Sheriff's Department, Report No. 2019-204534; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Armstead.pdf>.

67.    Contraband: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's jail facilities are overrun with drugs, including fentanyl, which are readily available to inmates. For example:

(a)    On January 27, 2025, the *Mays* consent decree monitors reported: "Deaths from drug overdoses continue. Custody has implemented increased measures to prevent drugs from coming into the jail. This includes enhanced inmate searches and separation of new arrivals from the general population. The Sheriff's office has implemented searches of non-uniformed staff, including health care.

28

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barabino v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

These measures have been insufficient to keep drugs out of the jail, and inmates reported to with us that drugs are readily available to them. Further measures need to be taken to prevent illicit drugs from entering the jail. At present, there are no measures in place to detect the introduction of contraband by custody staff. In our experience at jails and prisons across the country, including California Department of Corrections and Rehabilitation (CDCR), all staff, including uniformed staff are subject to searches for contraband." *Mays*, *supra*, ECF No. 197-1 at 16 (E.D. Cal. Jan. 27, 2025).

(b)    On September 19, 2024, it was reported that, since 2023, "there have been six confirmed or suspected in-custody fentanyl deaths in the Sacramento County jail," including "three confirmed overdose deaths in 2024," and, from January to September 2024, "110 doses of Narcan [were] administered to inmates either by a deputy or another inmate." *Some hiding drugs inside their bodies to smuggle it into Sacramento County jail, sheriff says* (Sep. 19, 2024), available at: <https://www.abc10.com/article/news/local/sacramento-county-addressing-fentanyl-jails-and-overdoses/103-67dae270-168c-4f0a-8e41-a81f1574060e>.

(c)    On July 16, 2024, *Mays* consent decree monitors reported that, following site visits at the jail facilities, "[i]nmates report that they have easy access to substances, including fentanyl," and "inmates reported to us that drugs were widely available, and if they 'put in an order today, I can pick it up tomorrow.'" *Mays*, *supra*, ECF No. 180-1 at 78 n.82, 95 n.94 (E.D. Cal. July 16, 2024).

(d)    On September 27, 2023, it was reported that at least six persons were "charged with smuggling drugs and tools into the jail in August [2023]," including "Zareonna Harris who worked as a medical assistant at the jail," "worked with inmates and others to distribute drugs at the jail," and "was caught on surveillance video giving drugs to an inmate and … receiving drugs outside of the jail." *Sacramento Co. sheriff blames county program after 6 accused of smuggling drugs into jail* (Sep. 27, 2023), available at: <https://www.abc10.com/article/news/local/sacramento-county-sheriff-frustrated-adult-correctional-health-program/103-d3ce63b7-187e-4502-a77a-cbd463e5b114>.

(e)    On August 15, 2023, *Mays* consent decree monitors reported that, following site visits at the jail facilities, "[m]edical record review and patient interviews show that inmates have free access to opioids and other drugs, including fentanyl,'" and that "[i]t has become apparent that drugs, including fentanyl are readily available at Main Jail, and at RCCC." *Mays*, *supra*, ECF No. 168-1 at 15,

112 (E.D. Cal. Aug. 15, 2024).

(f)     On August 14, 2023, Defendant COUNTY OF SACRAMENTO acknowledged "that drugs smuggled into the [Sacramento County Mail Jail] is a serious concern." *Letter re: Custody Staff Screening Measures* (Aug. 14, 2023), available at: <https://www.disabilityrightsca.org/system/files/file-attachments/23.08.14%20-%20Mays_County%27s%20Response%20re_%20Letter%20re_%20Custody%20Staff%20Screening%20Measures.pdf>. Nonetheless, Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER refused to implement a policy to routinely search custody staff while "currently ha[ving] no policy requiring custody staff to be screened in any way when they enter the jails." *Letter to Sheriff Jim Cooper* (Aug. 7, 2023), available at: <https://www.disabilityrightsca.org/system/files/file-attachments/23.08.07%20Ltr%20re%20Sacramento%20County%20Custody%20Staff%20Screening.pdf>.

(g)     On August 7, 2023, it was reported that Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's "own data" demonstrated that "Narcan, the life-saving emergency treatment for opioid overdose, ha[d] been administered at the Jail around 30 times since February 1, 2023." <https://www.disabilityrightsca.org/system/files/file-attachments/23.08.07%20Ltr%20re%20Sacramento%20County%20Custody%20Staff%20Screening.pdf>.

(h)     On August 2, 2023, Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER "acknowledged that drugs are widely available at the jails." <https://www.disabilityrightsca.org/system/files/file-attachments/23.08.07%20Ltr%20re%20Sacramento%20County%20Custody%20Staff%20Screening.pdf>.

(i)     On April 5, 2023, 35-year-old inmate Delion Johnson was booked into the Sacramento County Main Jail with a clear plastic bag containing about 45 pills, including a lethal quantity of fentanyl, and described as larger than "golf ball sized." During the booking process, Johnson

30

was subject to two separate body scans using a Tek84 Intercept body scanner and a pat-down search conducted by two different deputy sheriffs. The bag of pills was not detected or confiscated. In a holding cell, Johnson distributed several pills to several other inmates and ingested a lethal quantity of fentanyl, all while visible to jail staff on closed-circuit television (CCTV) monitoring and during safety checks. These activities were not monitored or detected by jail staff and Johnson overdosed inside of the cell. Johnson's lifeless body was not discovered by jail staff until more than four hours later, when an inmate-worker alerted jail staff that Johnson was non-responsive. Johnson died. A civil rights lawsuit was filed. *Estate of Johnson v. County of Sacramento*, No. 2:23-cv-01304-DC-JDP (E.D. Cal.). The case remains pending.

68.    <u>Lack of Leadership</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT lack competent leadership, including where Defendants ERIC SERGIENKO and JIM COOPER have consistently failed to facilitate and provide adequate care for inmates/patients at the jail. For example, on January 27, 2025, the *Mays* consent decree monitors found that, during the period that JARRED BARABINO died in the jail, "**The County lacks adequate medical leadership at the jail. [¶]** The Consent Decree provisions that are related to medical care have not continued to improve. The areas of inadequate progress include: medical provider backlogs, utilization management, specialty services, chronic disease tracking system, adoption of clinical guidelines, and a medically supervised substance withdrawal program. In addition, the County has not developed a system to regularly review provider quality. Previous reports have identified systemic issues in each of these areas, but the County has not meaningfully responded to these issues and most of these areas either have not improved or have worsened. [¶] The monitors identified patients with serious medical needs that required medical intervention and follow-up. We forwarded these cases to the County to coordinate follow-up care. However, the County took no action to provide these patients needed medical care, weeks or months after forwarding the cases to medical leadership. [¶] The County's failure to take action on behalf of these patients showed a callous disregard for their safety and well-being. In over 20 years of monitoring health care in prisons and jails, we have never encountered a situation in which medical leadership failed to ensure appropriate medical care follow-up of patients." *Mays*, *supra*, ECF No. 197-1 at 16 (E.D. Cal.

Jan. 27, 2025) (fn. omitted).

69.    Admissions: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER have admitted that the inmate care provided at correctional facilities under their care is deficient. For example:

(a)    In June 2024, Defendants SACRAMENTO COUNTY SHERIFF'S DEPARTMENT and JIM COOPER's spokesperson, sergeant Amar Gandhi, stated: "Medical care seems to be the number one issue right now, of everything going on in our facilities, and—unfortunately—it's something that we have zero sphere of control over. . . . Right now, there's a very clear gap in the medical care required and what's being given." *County Jail inmates have died in the past month and a half. What's going on?* (June 20, 2024), available at: <https://www.abc10.com/article/news/local/sacramento-county-officials-talk-about-recent-jail-deaths/103-9cf90a3c-2b0f-4153-929a-287a3eda0e0b>.

(b)    On September 27, 2023, at a press conference, Defendant JIM COOPER stated, "I take responsibility for my deputies—their actions and what they do." Defendant JIM COOPER expressly disclaimed the actions of "jail medical [staff]" because "they're inept." Defendant JIM COOPER stated, "I'm at my breaking point," and raised concerns with the practice of transporting inmates to the emergency room, which required two deputies to accompany the inmate at the hospital: "Their method is, when there's a problem, it's just easier to send somebody out [to the emergency room]. That's not the way you do it." *'I'm at my breaking point': Sacramento sheriff calls for jail health care overhaul* (Sep. 27, 2023), available at: <https://www.sacbee.com/news/local/article279795054.html>.

70.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER do not meaningfully discipline, re-train, correct, or otherwise penalize jail staff involved in critical incidents where preventable deaths and injuries are sustained by inmates, including incidents and misconduct described above. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's routine failure to hold jail staff accountable has created and encouraged an environment where personnel believe

they can "get away with anything."

71.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of JARRED BARABINO

72.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's inadequate policies, customs, training, supervision, and control of personnel and inmates/patients was a moving force behind and contributed to the death of JARRED BARABINO.

## FIRST CLAIM

### Deliberate Indifference

### (U.S. Const. Amend. IV; 42 U.S.C. § 1983)

73.    Plaintiff ESTATE OF JARRED BARABINO (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

74.    Plaintiff ESTATE OF JARRED BARABINO realleges and incorporates the allegations of the preceding paragraphs 1 to 72, to the extent relevant and as if fully set forth in this Claim.

75.    *Individual Liability*: Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 inadequately supervised, monitored, and responded to JARRED BARABINO, putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of the Fourth Amendment to the United States Constitution.

76.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO,

33

1   SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO,

2   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or

3   customs of action and inaction resulting in harm to JARRED BARABINO, in violation of Fourth

4   Amendment to the United States Constitution.

5       77.     Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM

6   COOPER, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved

7   reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

8       78.     JARRED BARABINO was injured as a direct and proximate result of Defendants

9   COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH

10  SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO

11  COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions,

12  entitling Plaintiff ESTATE OF JARRED BARABINO to receive compensatory (survival) and nominal

13  damages against Defendants COUNTY OF SACRAMENTO, SASACRAMENTO COUNTY

14  DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO,

15  SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1

16  to 20; and punitive damages against Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO,

17  SHIELA VIBAR, JIM COOPER, and DOE 1 to 20.

18      WHEREFORE, Plaintiff ESTATE OF JARRED BARABINO prays for relief as hereunder

19  appears.

20                          **SECOND CLAIM**

21                  **Title II of the Americans with Disabilities Act**

22                      **(42 U.S.C. § 12101, *et seq.*)**

23      79.     Plaintiff ESTATE OF JARRED BARABINO (pursuant to California Code of Civil

24  Procedure § 377.30) asserts this Claim against Defendants COUNTY OF SACRAMENTO,

25  SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO

26  COUNTY SHERIFF'S DEPARTMENT.

27      80.     Plaintiff ESTATE OF JARRED BARABINO realleges and incorporates the allegations of

28  the preceding paragraphs 1 to 72, to the extent relevant and as if fully set forth in this Claim.

81.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. JARRED BARABINO had an impairment that substantially limited one or more major life activities and had a record of such an impairment.

82.     *Vicarious Liability*: Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 failed reasonably to accommodate JARRED BARABINO's disability, where a reasonable accommodation was available, including by, *inter alia*, conducting a timely and adequate medical screening; issuing routine medical orders or an urgent referral to a medical provider; transfer to a facility that could provide necessary medical care or treatment; monitoring based on serious medical needs; and/or timely responding to serious medical needs, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

83.     *Municipal /Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to JARRED BARABINO, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

84.     Plaintiff JARRED BARABINO was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF JARRED BARABINO to receive compensatory (survival) and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

WHEREFORE, Plaintiff ESTATE OF JARRED BARABINO prays for relief as hereunder appears.

\ \ \

**THIRD CLAIM**

**§ 504 of the Rehabilitation Act**

**(29 U.S.C. § 701, *et seq*.)**

85.     Plaintiff ESTATE OF JARRED BARABINO (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

86.     Plaintiff ESTATE OF JARRED BARABINO realleges and incorporates the allegations of the preceding paragraphs 1 to 72, to the extent relevant and as if fully set forth in this Claim.

87.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104, and receive federal financial assistance. JARRED BARABINO had an impairment that substantially limited one or more major life activities and had a record of such an impairment.

88.     *Vicarious Liability*: Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 failed reasonably to accommodate JARRED BARABINO's disability, where a reasonable accommodation was available, including by, *inter alia*, conducting a timely and adequate medical screening; issuing routine medical orders or an urgent referral to a medical provider; transfer to a facility that could provide necessary medical care or treatment; monitoring based on serious medical needs; and/or timely responding to serious medical needs, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

89.     *Municipal /Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to JARRED BARABINO, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

90.     Plaintiff JARRED BARABINO was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH

36

1   SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO

2   COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions,

3   entitling Plaintiff ESTATE OF JARRED BARABINO to receive compensatory (survival) and nominal

4   damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

5   DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S

6   DEPARTMENT.

7           WHEREFORE, Plaintiff ESTATE OF JARRED BARABINO prays for relief as hereunder

8   appears.

9                                    **FOURTH CLAIM**

10                   **Unwarranted Interference with Familial Association**

11                   **(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

12          91.   Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY assert this Claim

13   against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF

14   HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR,

15   SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

16          92.   Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY reallege and

17   incorporate the allegations of the preceding paragraphs 1 to 78, to the extent relevant and as if fully set

18   forth in this Claim.

19          93.   Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY shared a close

20   relationship and special bond with JARRED BARABINO, which included deep attachments,

21   commitments, and distinctively personal aspects of their lives and was typical of a loving relationship,

22   prior to his death. Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY frequently visited

23   and spoke with JARRED BARABINO and shared a loving familial relationship.

24          94.   *Municipal / Supervisory / Individual Liability*: Defendants COUNTY OF

25   SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC

26   SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY

27   SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20 caused the unwarranted interference

28   with, and premature termination of, Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY's

familial association with JARRED BARABINO, in the violation of the Fourteenth Amendment to the United States Constitution.

95.    Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

96.    Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory (wrongful death) and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and DOE 1 to 20.

WHEREFORE, Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY pray for relief as hereunder appears.

## FIFTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. I; 42 U.S.C. § 1983)

97.    Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

98.    Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY reallege and incorporate the allegations of the preceding paragraphs 1 to 78, to the extent relevant and as if fully set forth in this Claim.

99.    Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY shared a close

38

relationship and special bond with JARRED BARABINO, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving relationship, prior to his death. Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY frequently visited and spoke with JARRED BARABINO and shared a loving familial relationship.

100.     *Municipal / Supervisory / Individual Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY's familial association with JARRED BARABINO, in the violation of the First Amendment to the United States Constitution.

101.     Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

102.     Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory (wrongful death) and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and DOE 1 to 20.

WHEREFORE, Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY pray for relief as hereunder appears.

\ \ \

\ \ \

1

## SIXTH CLAIM

### Deliberate Indifference

### (Cal. Const. Art. I § 13)

103.    Plaintiff ESTATE OF JARRED BARABINO (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

104.    Plaintiff ESTATE OF JARRED BARABINO realleges and incorporates the allegations of the preceding paragraphs 1 to 72, to the extent relevant and as if fully set forth in this Claim.

105.    *Individual Liability*: Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 inadequately supervised, monitored, and responded to JARRED BARABINO, putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of Article I § 13 of the California Constitution.

106.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to JARRED BARABINO, in violation of Article I § 13 of the California Constitution.

107.    *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code § 815.2(a), for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and/or DOE 1 to 20.

108.    Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved

40

reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

109.    JARRED BARABINO was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF JARRED BARABINO to receive compensatory (survival) and nominal damages against Defendants COUNTY OF SACRAMENTO, SASACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF JARRED BARABINO prays for relief as hereunder appears.

## SEVENTH CLAIM

### Failure to Summon Medical Care

### (Cal. Gov. Code § 845.6)

110.    Plaintiff ESTATE OF JARRED BARABINO (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

111.    Plaintiff ESTATE OF JARRED BARABINO realleges and incorporates the allegations of the preceding paragraphs 1 to 72, to the extent relevant and as if fully set forth in this Claim.

112.    *Individual Liability*: Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 knew or had reason to know that JARRED BARABINO was in need of immediate medical care and failed to take reasonable action to summon such medical care, in violation of California Government Code § 845.6.

113.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO,

41

1  SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO,

2  SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or

3  customs of action and inaction resulting in harm to JARRED BARABINO, in violation of California

4  Government Code § 845.6.

5         114.    *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO

6  COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S

7  DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to

8  California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and

9  omissions of employees acting within the scope of employment, including Defendants ERIC

10  SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and/or DOE 1 to 20.

11        115.    Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM

12  COOPER, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting

13  in great harm.

14        116.    JARRED BARABINO was injured as a direct and proximate result of Defendants

15  COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH

16  SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO

17  COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions,

18  entitling Plaintiff ESTATE OF JARRED BARABINO to receive compensatory (survival) and nominal

19  damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY

20  DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO,

21  SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1

22  to 20; and punitive damages against Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO,

23  SHIELA VIBAR, JIM COOPER, and DOE 1 to 20.

24        WHEREFORE, Plaintiff ESTATE OF JARRED BARABINO prays for relief as hereunder

25  appears.

26  \ \ \

27  \ \ \

28  \ \ \

## EIGHTH CLAIM

### Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

117.    Plaintiffs ESTATE OF JARRED BARABINO (pursuant to California Code of Civil Procedure § 377.30), W.B., N.B., ROBERT BARABINO, and SUE SCHLEY assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

118.    Plaintiffs ESTATE OF JARRED BARABINO, W.B., N.B., ROBERT BARABINO, and SUE SCHLEY reallege and incorporate the allegations of the preceding paragraphs 1 to 116, to the extent relevant and as if fully set forth in this Claim.

### Deliberate Indifference

119.    *Individual Liability*: Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 inadequately supervised, monitored, and responded to JARRED BARABINO, putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, with deliberate indifference or reckless disregard, in violation of the Fourteenth Amendment to the United States Constitution; and Article I § 13 of the California Constitution.

120.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to JARRED BARABINO, with deliberate indifference or reckless disregard, in violation of the Fourteenth Amendment to the United States Constitution; and Article I § 13 of the California Constitution.

### Title II of the Americans with Disabilities Act & § 504 of the Rehabilitation Act

121.    *Vicarious Liability*: Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 failed reasonably to accommodate JARRED BARABINO's disability, where a reasonable accommodation was available, including by, *inter alia*, conducting a timely and adequate medical

43

screening; issuing routine medical orders or an urgent referral to a medical provider; transfer to a facility that could provide necessary medical care or treatment; monitoring based on serious medical needs; and/or timely responding to serious medical needs, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

122.    *Municipal /Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to JARRED BARABINO, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

Unwarranted Interference with Familial Association

123.    *Municipal / Supervisory / Individual Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE SCHLEY's familial association with JARRED BARABINO, with deliberate indifference or reckless disregard, in violation of the First and Fourteenth Amendments to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

Failure to Summon Medical Care

124.    *Individual Liability*: Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 knew or had reason to know that JARRED BARABINO was in need of immediate medical care and failed to take reasonable action to summon such medical care, with deliberate indifference or reckless disregard, in violation of California Government Code § 845.6.

125.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or

44

1  customs of action and inaction resulting in harm to JARRED BARABINO, with deliberate indifference

2  or reckless disregard, in violation of California Government Code § 845.6.

3  * * *

4  (Allegations Common to All Theories)

5  126.  *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO

6  COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S

7  DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to

8  California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and

9  omissions of employees acting within the scope of employment, including Defendants ERIC

10  SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and/or DOE 1 to 20.

11  127.  Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM

12  COOPER, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting

13  in great harm.

14  128.  JARRED BARABINO and Plaintiffs W.B., N.B., ROBERT BARABINO, and SUE

15  SCHLEY were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO,

16  SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN

17  VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT,

18  JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiffs ESTATE OF JARRED

19  BARABINO, W.B., N.B., ROBERT BARABINO, and SUE SCHLEY to receive compensatory (survival

20  and wrongful death) and treble damages and penalties against Defendants COUNTY OF

21  SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC

22  SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY

23  SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against

24  Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and

25  DOE 1 to 20.

26  WHEREFORE, Plaintiffs ESTATE OF JARRED BARABINO, W.B., N.B., ROBERT

27  BARABINO, and SUE SCHLEY pray for relief as hereunder appears.

28  \ \ \

45

## NINTH CLAIM

### Intentional Infliction of Emotional Distress

129.    Plaintiff ESTATE OF JARRED BARABINO asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20.

130.    Plaintiff ESTATE OF JARRED BARABINO realleges and incorporates the allegations of the preceding paragraphs 1 to 128, to the extent relevant and as if fully set forth in this Claim.

131.    *Individual Liability*: Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 engaged in outrageous conduct, including by inadequately supervising, monitoring, and responding to JARRED BARABINO's personal safety risks and serious medical needs, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, with intent or reckless disregard of the probability that JARRED BARABINO would suffer emotional distress and he did suffer severe emotional distress.

132.    Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

133.    JARRED BARABINO was injured as a direct and proximate result of Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF JARRED BARABINO to receive compensatory (survival) and nominal damages against Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20; and punitive damages against Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF JARRED BARABINO prays for relief as hereunder appears.

## TENTH CLAIM

### Negligence

134.    Plaintiff ESTATE OF JARRED BARABINO asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO

OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

135.    Plaintiff ESTATE OF JARRED BARABINO realleges and incorporates the allegations of the preceding paragraphs 1 to 133, to the extent relevant and as if fully set forth in this Claim.

136.    *Individual Liability*: Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 owed JARRED BARABINO a duty of care and breached that duty, including by inadequately supervising, monitoring, and responding to JARRED BARABINO's personal safety risks and serious medical needs, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

137.    *Supervisory Liability*: Defendants ERIC SERGIENKO and JIM COOPER owed JARRED BARABINO a duty of care, including through (a) Defendants ERIC SERGIENKO and JIM COOPER's own conduct in creating or increasing an unreasonable risk of harm to JARRED BARABINO; (b) Defendants ERIC SERGIENKO and JIM COOPER's special relationships (employer-employee) with Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20; and/or (c) Defendants ERIC SERGIENKO and JIM COOPER's special relationships (public protection and/or jailer-prisoner) with, and affirmative duty to protect, JARRED BARABINO, and breached that duty including by maintaining policies or customs of action and inaction which resulted in harm to JARRED BARABINO in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

138.    *Municipal Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT maintained policies or customs of action and inaction resulting in harm to JARRED BARABINO, in violation of California Government Code §§ 815.6, 845.6.

139.    *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to

California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and/or DOE 1 to 20.

140.    Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

141.    JARRED BARABINO was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF JARRED BARABINO to receive compensatory (survival) damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF JARRED BARABINO prays for relief as hereunder appears.

## ELEVENTH CLAIM

### Wrongful Death

### (Cal. Code Civ. Proc. § 377.60)

142.    Plaintiffs W.B. and N.B. assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20.

143.    Plaintiffs W.B. and N.B. reallege and incorporate the allegations of the preceding paragraphs 1 to 141, to the extent relevant and as if fully set forth in this Claim.

144.    Plaintiffs W.B. and N.B. are the biological children of JARRED BARABINO. JARRED

48

BARABINO and Plaintiffs W.B. and N.B. shared a natural parent-child relationship. JARRED BARABINO held out Plaintiffs W.B. and N.B. as his own. JARRED BARABINO frequently visited and spoke with Plaintiffs W.B. and N.B. and shared a loving father-daughter relationship with them, prior to JARRED BARABINO's death. Plaintiffs W.B. and N.B. are JARRED BARABINO's successors-in-interest.

145.    *Individual Liability*: Defendants HELEN VIRTUDAZO OLASO, SHIELA VIBAR, and DOE 1 to 20 caused JARRED BARABINO's death by wrongful act and neglect, including by inadequately supervising, monitoring, and responding to JARRED BARABINO's personal safety risks and serious medical needs, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

146.    *Municipal / Supervisory Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER caused JARRED BARABINO's death by wrongful act and neglect, including by maintained policies or customs of action and inaction resulting in harm to JARRED BARABINO in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, California Government Code §§ 815.6, 845.6, and/or California Civil Code § 1714(a).

147.    *Vicarious Liability*: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and/or DOE 1 to 20.

148.    Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

149.    JARRED BARABINO died as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20's actions and inactions, entitling Plaintiffs W.B. and N.B. to receive compensatory (wrongful death) damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20; and punitive damages against Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and DOE 1 to 20.

WHEREFORE, Plaintiffs W.B. and N.B. pray for relief as hereunder appears.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ESTATE OF JARRED BARABINO, W.B., N.B., ROBERT BARABINO, and SUE SCHLEY seek Judgment as follows:

1.    For an award of compensatory, general, special, and nominal damages (including survival and wrongful death damages under federal and state law) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20, according to proof at trial;

2.    For an award of exemplary/punitive damages against Defendants ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, JIM COOPER, and DOE 1 to 20, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done; and/or constituted oppression, fraud, or malice resulting in great harm;

3.    For funeral and/or burial expenses;

4.    For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants COUNTY OF SACRAMENTO, SACRAMENTO

50

COUNTY DEPARTMENT OF HEALTH SERVICES, ERIC SERGIENKO, HELEN VIRTUDAZO OLASO, SHIELA VIBAR, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and DOE 1 to 20, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY DEPARTMENT OF HEALTH SERVICES, and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, pursuant to California Civil Code § 818);

5.    For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794, 42 U.S.C. § 12205, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, and any other statute as may be applicable;

6.    For interest; and

7.    For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: November 3, 2025                    Respectfully Submitted,

By: _____
Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF JARRED BARABINO, W.B., N.B., ROBERT BARABINO, and SUE SCHLEY

1

## JURY TRIAL DEMAND

2          A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF JARRED BARABINO,

3    W.B., N.B., ROBERT BARABINO, and SUE SCHLEY.

4    Dated: November 3, 2025                    Respectfully Submitted,

5

6

7                                              By: _____

8                                                   Mark E. Merin
                                                    Paul H. Masuhara
9                                                   LAW OFFICE OF MARK E. MERIN
                                                    1010 F Street, Suite 300
10                                                  Sacramento, California 95814
                                                    Telephone: (916) 443-6911
11                                                  Facsimile: (916) 447-8336

12                                                  Attorneys for Plaintiffs
                                                    ESTATE OF JARRED BARABINO, W.B., N.B.,
13                                                  ROBERT BARABINO, and SUE SCHLEY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Barabino v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____